James Spann raped his cellmate at the Jefferson City Correctional Center. This was the second rape of another offender while being held in the custody of the Missouri Department of Corrections within one year. He was held at the Jefferson City Correctional Center, which is a maximum security facility in Missouri Department of Corrections. At the time of this rape on another inmate, he was held in administrative segregation, the most secure wing within the most secure prison state. After an investigation, he was placed on single cell status and held in administrative segregation, the only wing within the facility which could allow for an offender to be held without a cellmate. He was placed in single cell status because it was an ongoing danger to every other offender within the facility, as shown by his multiple rapes in such a short period of time. Place him in this place. Now the second rape, the one that or the second alleged rape, that's is that the one where the the victim later recanted? Yes, five years later, the victim did recant. This was done while the case was ongoing. We do dispute the circumstances of that. Very suspect, which the rationality gives is, for lack of a better term, Is that in our record? No, no, go ahead. Is that in our record? We do dispute the details. We bring up in the, I believe it's in our reply to plaintiff's summary judgment, we bring up our issues with the offender. In the course of his disciplinary hearing, he was afforded the minimum standards of due process that are required under Wolf-Pemigod. He was given actual notice of the hearing through a conduct violation form, which told him what he was charged with, at what date the offense was alleged to have occurred, and gives him notice that a hearing is forthcoming. He had a hearing in which he could call witnesses, which he did. He called a witness by the name of Offender Matthew Johnson, if I remember correctly. That offender gave a statement to, a written statement to the fact finders, Rayna Martin and Michael Kaelin. He was also allowed to give his own statement. Gave a rather lengthy statement to Rayna Martin and Michael Kaelin. So, could you, before you get too far into the facts, could you back up to the procedural posture of the appeal? Yes. My understanding is this is a qualified immunity appeal. That's why we have, you say we have jurisdiction. It is a qualified immunity appeal. But we don't have any ruling from the district court on qualified immunity, as I understand it, on any of these claims. Correct. So, my question is, should we send it back for a ruling by the district court on qualified immunity on either or both claims? I think that, at minimum, that's what the court should do. But we are asking you to invoke the same logic used in Saylor v. Brascombe. The court had enough of the court to make a ruling. Yeah, I know you're asking us to do that, but that's unusual, isn't it? It is unusual. In our cases, don't we usually say we want a ruling from the district court first, before we delve into these fact-intensive qualified immunity cases? It is unusual. I also think that the six-year-long litigation prisoner case is unusual itself. I think it requires an unusual ruling. Well, what about the district court's ruling that you didn't properly raise qualified immunity? Why shouldn't we affirm that? Qualified immunity was raised throughout the Pennsylvania entire case, as the case evolves. Yeah, I know it was raised at motion for summary judgment. We did raise it in a motion for summary judgment, but we raised it by reference. We didn't use the term qualified immunity. However, I still laid out the facts that would require qualified immunity in our case. Qualified immunity in summary judgment brief, if you want to get it? We don't necessarily need to use the term qualified immunity to raise it. I would look at, we have several district court cases, Davis v. Oklahoma out of Oklahoma, and construction industrial labor's pension fund v. Wellington out of Missouri, where neither party ever brought up the term qualified immunity, yet the court still did its analysis because it had noticed that's what was being argued. Well, maybe it's been adequately pleaded as an affirmative defense. It's in the case, but I just wonder whether on a motion for summary and so forth in order to get a ruling. I think that the rest of the briefs do indicate that we believe A, that what Fender Span is seeking is not a clearly established right. B, that there was no violation. But those are decisions that ought to be made in the first instance. Aren't those decisions that need to be made in the first instance below for district court? Once again, we do believe the court should have done that, which is why we're saying it's error. We also believe that this court, under its prior ruling in Saylor, has the ability to substitute court judgment for their own in this situation, when it's extraordinary. This, as I said, is an extraordinary case. On Judge Colleton's question, the district court said, and this is in the summary judgment order, the court also denies the defendant's motion to the extent it reasserts by reference, defenses of privileges and immunities alleged in prior motions to dismiss. Is that essentially what you did? You said, we brought this up in the motion to dismiss, and you said you reasserted it by reference. Is that all you did? It's one sentence in the brief? We did that because we had already made the substantive argument. Within the summary judgment motion, like I said, we already argued there's no violation of right or that there's no right there that Fender Span is attempting to impose. Well, so if that's all you did, I just wonder, you know, the inquiry is different at the motion to dismiss. You're talking about the pleadings, the motion to dismiss, and there's evidence at the summary judgment phase. I wonder whether there was an obligation to kind of hinge off of what was being asked about earlier to discuss some of that evidence and whether there's genuine issues, material fact, what supports summary judgment in the evidence, not just the pleadings for the defendants on qualified immunity. Don't you think there'd be some obligation to alert the court to some of these facts? I don't know if I agree with that, mainly because if the substance of the arguments are all the same, then the only thing that gets added on is possibly a single sentencing for the foregoing direct summary judgment and fine qualified immunity. So your point really is there was no evidence. There was no discovery or any, well, there's no evidence developed between the motion to dismiss and the summary judgment that would have created an obligation to argue anything different. It was basically the exact same argument. It would be the exact same argument, and I'm saying nothing discovered brought forth through discovery changes the argument. Okay. Whether through the motion to dismiss or the legal arguments made in the summary judgment, everything in our opinion stayed the same. Same argument made then or the same argument. And as for count two, the dangerous conditions of confinement count, there isn't even an issue of preservation. Court reinstated that count five days before the trial was supposed to start off of a motion to reconsider that was filed after discovery had closed along with the summary judgment. This count when it was reinstated, the trial court did not ever look at qualified immunity at that time. However, qualified immunity was raised in that motion to dismiss. We were denied an analysis on qualified immunity, and the court has routinely stated that refusal to examine qualified immunity is in effect a denial of qualified. So while I can understand the court's reticence when it comes to the remaining counts, count two, this issue, we should have gotten a ruling on qualified immunity. It's a constructive denial of qualified immunity because it was clearly in the motion, and the court just did not consider that aspect. Well, it was in the, what do you mean it was in the motion? It was in the original motion to dismiss. Is that what you mean when you say it was in the motion? You could have done a better job in the response to the motion to reconsider maybe in saying that it should not be reconsidered because there's qualified immunity. But I understand what you're saying, that it was in the motion to dismiss. So if the judge is going back to square one, you think you've adequately raised it. But you won originally just on the ground that there was no adequately pleaded constitutional violation, right? The judge didn't get the qualified immunity. Yes, the court. So you might have responded to the motion to reconsider by saying you were right the first time, but even if you were wrong, even if they're right that you were wrong, you still should have ruled the same way because of qualified immunity. You could have saved everybody a lot of time. It probably would have been best, but I don't believe you were obligated to because the motion has to reconsider explicitly raised it. Yeah, I understand. I'm going to get back into the substance very briefly. Under Wolfie McDonald, the plaintiff has received all of the due process rights he is afforded to. Given a hearing, he was given an opportunity to call witnesses, and he was given a written disciplinary action report, which gives his the reasons for the finding. Now, I want to point out one thing. Plaintiff has asserted that this was not done by an impartial fact finder because the warden at one point was the one who directed a prison official to issue a conduct violation to the final reviewer of the conduct violation, not the one who made the initial finding by the disciplinary board that this rape occurred. That was done by a functional unit manager, Raina Martin, and Lieutenant Michael Kaelin. This argument belies that the prisoner has no constitutional right to a review. He has a constitutional right to a disciplinary action. He received that. As for Raina Martin, there is a big ado within the record about a single email which she sent which says he is guilty. This was done during the break in the proceedings in which all the evidence had been collected. After she had there is no constitutionally clearly established right for him to reconvene before she made her decision. We believe qualified immunity applies to that, that one, there is no violation, and two, if you are to find that this is a violation, that this violation was not clearly established at the time she did it. I do have some further arguments, but I'm also cutting into my rebuttal time, so I'll come back soon. Thank you. Thank you, Mr. Jackson. Mr. Lear. Your honors, may it please the court. The key question here at the outset, of course, is the jurisdictional question. Of course, we're here on interlocutory appeal. There has been no final judgment. This court has a very limited set of circumstances when it can take up an interlocutory order such as this one, and in this instance, it is the appellee's position that the, and frankly, I think clear on the record that there is no order. There's two orders that are being appealed, neither of which speak to qualified immunity, and the reason neither of which speak to qualified immunity is that Judge Wimes was not asked to rule on qualified immunity on either of those motions. Well, you're sure he wasn't asked on count two? Because you filed a motion to reconsider the original decision on the motion to dismiss, and as I understand it, the motion to dismiss did argue qualified immunity, so if he was going to go back and reconsider that, shouldn't he have ruled on qualified immunity before denying the motion? So it is certainly the case that the procedural posture, so to speak, between these two orders is very different. Right, I know. I'm asking about count two. Your honor is correct that the, originally, the qualified immunity was pled in the initial motion to dismiss. The court did not reach it because it dismissed the case on another reason, and I understand that. Here's what I have for you on that point. Number one, in the motion to reconsider that I filed, I invited the defendants to make any, to raise any substantive defenses that they have in opposition to the motion, including on summary judgment, on Rule 56 grounds. Now, of course, the defendants aren't obligated to defend a motion the way their opponent asked them to, but it is the case that the defendants at that point chose not to raise qualified immunity as an alternative reason to deny the motion to reconsider or to sustain or to maintain the dismissal of those claims. And then there was a second time. After the court advised the parties that the motion to reconsider was being granted, we were in the run-up to trial at that point, the defendants then filed a motion to continue the trial, citing that the granting of the motion to reconsider is the reason, but never arguing that the reason that, as a result of that granting the motion to reconsider, they wanted to raise qualified immunity as a defense and wanted that legal offense heard. So there was an opportunity to ask Judge Wimes to weigh in on qualified immunity with respect to count two. Then the defendants chose not to raise it then either. I think that the affair reading of the, and I understand that the postures are different, but it's also the case that the plaintiff filed a, we're up to third amended at this point, so there's an original complaint filed, pro se, the plaintiff amended, then my office got involved, was appointed on the case. We initially filed a second amended complaint, and then after some litigation, the final complaint, which is the third amended complaint, was filed. In that, we had already had the ruling on the motion to dismiss on the second amendment on the conditions of confinement claim, but to along with the other claims in the third amended complaint. There is no qualified immunity defense raised in the affirmative defenses. Well, let me ask you this though. Even as to the other claims, you heard the language that I read to opposing counsel earlier. The district court said, you know, to the extent these are raised again by reference, I'm going to deny them for the exact same reasons that I denied these privileges and immunities before. Isn't that, that is technically a decision at summary judgment on qualified immunity? I would take issue with the construction, your honor, if I may respectfully. The, we raised in our opposition to the, there is, it is a one line sentence, of course, it'll say that, right? We raised in our opposition that that preserves nothing. Those are motions to dismiss to prior, now superseded complaints. My reading of the same reasons I dismissed then, I'm dismissing now. My court's reading of the ruling is the way you presented it on, on summary judgment has preserved nothing for this court's review. So it's a, a waiver ruling, not a procedural ruling, not a substantive. I think that's very, very, that stretches it considerably. Maybe you can convince me. The court also denies the MDOC defendant's motion to the extent it reasserts by reference defenses of privileges and immunities alleged in prior motions to dismiss. I don't see the word waiver, forfeiture, or anything of the sort. It's saying to the extent it's raised, I'm denying it again for the same reason as the motion to dismiss. Perhaps. I, I, I, I'll have to, I'd have to pull it. I don't know at the time. I, I do remember certainly in the briefing discussion of you're obligated to come forward on summary judgment with, with argument and facts. The. Well, he goes on to say the defendants failed to properly plead the defenses in their answer to the operative complaint. And then he says in the briefing on the summary judgment motion, they didn't offer anything related to their affirmative defenses. So. Judge Calton's. Do you think that means that he was saying it wasn't properly briefed? That's what I was remembering your honor. And so that was my first, I mean, I agree with all of that. I mean, he points out and that's why I think he says to the extent, but then why make a decision saying I'm, I'm referring back to the motion to dismiss and doing the same thing here. Again, respectfully, you know, now we're just getting to sort of loose language and somewhat well, but in some respects that that's invited, if you will, by, or is made possible by the fact that these, these points weren't clearly raised by the defendants like they could have, uh, in which case I right now, judge Wimes is just has one sentence. Uh, that's not briefed. And in fact, in our opposition, which all of the summary judgment briefing is included. And sometimes I know it's getting into the weeds on these things, but when we're dealing with these procedural questions, the timeline and the back and forth between the parties matters in the opposition, the plaintiff files, the summary judgment plan that we raise your honor, this doesn't preserve anything and go into our, our position that it's waived. And for the reasons, some of which were cited by the judge, of course, the defendants get another brief, a reply brief at that point to the defendants raise specifically qualified immunity, make a finding back to release. Are you, are you at all in the clear, clear question of law? No, it's not, it's not addressed at all. So is this less a question then about jurisdiction and more question of forfeiture or waiver then do you think, I mean, at least the way, at least the way I'm reading this, um, to my mind, it's still a question of jurisdiction. I understand now this is my first ever 1983 probably last ever 1983 case. So I, uh, I apologize for not being a subject matter expert on it, but my understanding of the case law on the point is that the question on an the, the order, uh, raises qualified, you know, it speaks to qualified immunity. That's a jurisdictional a question, not just a preservation question or waiver question. Uh, and for that reason, you know, that's because of the interlocutory, uh, standing is, you know, is, is a very narrow, uh, allowed exception to the general rule that this court only has jurisdiction to take up, uh, final judgments. So your position is that we should read the court's language as having affirmatively denied qualified immunity? No, Your Honor. My, my position is to read, uh, the court's language that the court's position was that the defendant did not raise qualified immunity. Now, do you think it's still in the case so that at trial the defendants are free to raise qualified immunity? That's a, that's the stickier wicket, so to speak, uh, Your Honor. The question there is going to be whether or not the incorporation by reference of the legal arguments, which is the only affirmative defense, so to speak, that has been pleaded, uh, is, is sufficient. I presume that they will be baking that argument. Qualified immunity, of course, is both a, uh, bar to suit, so to speak, and or immunity from suit, but also, uh, an immunity from liability. And so to the extent, again, You're trying to say it's waived for all time. The, I'm not currently authorized to, to concede that that is not the case. It would come up. Yeah, go ahead. It would come up in further proceedings, it sounds like. Yes, Your Honor, that's right. Maybe a disputed issue. That's right. And that's, of course, there's ample opportunity for the, the, the defendants to ask for the court to take up the issue on, on the, you know, the conditions of confinement count, or even on, on the other counts. And then the trial judge will have, our trial judge will have to make, uh, the decisions on whether those requests are proper, and if so, what the substantive rulings are. None of those, uh, things are currently before Your Honors. You know, on the, the other reason that, so, of course, I'm hesitant, as, as you always would be, right, to get into the merits, uh, when your, your lead, and, and, and, frankly, best argument is that we just don't have jurisdiction. But I'd be remiss to at least not point, uh, point out a related concept here, uh, with respect to the, all of the claims that are covered by the summary judgment order, right, which is another reason that this court, uh, will not have jurisdiction to take up an interlocutory appeal is if, uh, if the decision turns not on a narrow question or, or a clear question of law, but on disputed facts. And, of course, at least with respect to the summary judgment, uh, order and the claims that are, that are considered under summary judgment, that's an independent, the, the court makes detailed findings of disputed facts. In fact, the, it's not on appeal, but the plaintiffs, plaintiffs move for cross-summary judgment, and other disputes of facts are articulated in the court's order there. So this is a situation where our trial judge has waded through a significant record, uh, all of which, of course, is now before your honors, and found disputes of fact. The, this court's jurisprudence is clear that on, at an interlocutory appeal, uh, this court has no jurisdiction to take up decisions that turn on disputes of fact. And so that is an independent reason, uh, why, uh, there's no jurisdiction, at least with respect to those claims. And then I would just, uh, make one point and, and then close, and of course, if there are other questions, I'm, that's, that's why I'm here. But the, uh, the complaint and the, the pleadings make, uh, take pains to, uh, articulate for your circumstances. Uh, and, uh, for each of the claims, uh, that was presented to the court, and for each of the claims, Judge Wimes noted those, those basic, uh, rules, and then later, uh, found questions of fact on, on all of them, with the exception of the, the, again, the motion, uh, to reconsider. This just isn't a situation where we have a trial judge who is, you know, over his skis, or refusing to engage in an analysis that this court has found, uh, is, you know, can be problematic and, and warranting reversal. Uh, this is a situation, I, I'm, I'm not going to do it justice, but I heard it best explained by Chief Justice Roberts when he explained that a court is, uh, does its best job when it views itself as the umpire in the baseball game, so to speak. In this situation, on the, on the, uh, orders that are before you, the defendant simply did not, chose not to throw out the qualified immunity pitch, and as a result of that, Judge Wimes is never asked to make a call, you know, on those, those, on that defense, and because of that, there's nothing here for your honors to review. There are no other questions? So a question for you is, um, so we seem to be, at least on affirmative defenses, a little, little more lenient on whether something has been repeatedly pleaded or repeatedly raised, and so we have a case, I don't, you may not be familiar, but it embodies a general principle. Yes. First Union National Bank versus Pictet Overseas, 477 F 3rd 616, where there was a failure to, to, to bring an affirmative defense up at one stage of the litigation. We said, look, it's constructively pleaded. Um, why shouldn't we do that here, where it was raised sort of repeatedly, um, the district court sort of it was raised repeatedly, and yeah, they probably dropped the ball on summary judgment, but this kind of seems like a, a Pictet type case. Well, your honors, I, I would say the reason that you wouldn't do it here is because there's no need for you to reach that issue. Ultimately, the question of, of whether or not under the case law you cited, I'm familiar with the general concept, not the specifics of the case, um, that, that question is ultimately now one for, for me to have done enough to at least raise the issue, uh, given the posture of the entire, the entire case and all the litigation that's happened to present that defense at trial is one for the trial judge to make. And then ultimately perhaps be subject to your review, uh, after, after he's made that decision, but we're not there yet. Are there any other questions? Thank you, drivers. Thank you, Mr. Lear. Mr. Jackson, your rebuttal. Judge, I'd like to take a shot at answering your last question. We should apply that here because the moment the trial starts, we've been prejudiced. Qualified immunity is for, is freedom from suit. We lose that privilege to, we lose that, that freedom the moment we, the jury is seated. Um, this is the only opportunity we have. This is why we brought up on an interlocutory appeal to avoid that burden. This is the, now, had we gotten this but we were left no choice. Why not appeal after the motion to dismiss when you squarely raised it? Um, well, the motion to dismiss on, on count two or the rest of the counts? Well, the rest of them where, where you were denied qualified immunity, at least in part in the, in the, in the order for the motion to dismiss. Um, on one aspect, I wasn't the attorney on the case at the time, so I can't. Fair. Okay. But also they weren't obligated to. We're entitled to appeal at both. I agree. The dismissal stage and a summary judgment stage. So we're still acting within our rights appealing it now. Um, I want to just remind the court, the first motion for dismiss on the operative complaint, qualified immunity, second motion to dismiss the amended complaint, qualified immunity was raised. On the third, uh, uh, there was a third complaint in which qualified immunity was raised. That one was granted in respect to the failure to say the claim qualified immunity was never raised. The court was given fair notice of what it is we were seeking. Well, the court's language was that the MDOC defendants failed to properly plead the affirmative defenses in their answer to the operative complaint, which would be the third one. Is that right? Correct. So is the court misstating the record? Uh, not necessarily. This was three cases consolidated into one. Uh, so there's pleading. I don't want to sound too flippant, there's pleadings all over the place when it comes to this. Uh, this issue has been raised three separate times before the third amended, third consolidated amended complaint was filed. That one consolidated everything together into one document. And because we've already litigated all these issues out before, we raised it by reference because at that point, the court already made clear its intention to not rule on qualified immunity, to not grant qualified immunity. Uh, except for in count two, in which it's granted on different grounds. But the issue had been raised several times, three separate times before, and then we raised it by reference. So you raised it by reference even to the operative complaint? Yes, any operative complaint. Okay. And we say any defenses and immunities, the only immunity we ever planned was qualified immunity. That was it. So when the, when the district court says they failed to properly plead the affirmative defenses in their answer to the operative complaint, that's wrong to the extent that it ignores the fact that you incorporated it by reference. It agrees to me that the court just didn't consider that adequate. Okay. But to us, that violates Rule 8D, which prioritizes form over substance. Okay. The substance is there, which is why the court should have made a ruling, a full and complete analysis on qualified immunity, which it failed to do. If there's no other questions, that's all right. Thank you. Thank you, Mr. Jackson. Court thanks both counsel for your presence and argument you've provided to the court today. We'll take the case under advisement. Court being recessed.